761 So.2d 469 (2000)
David Mathew WEIBLE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3110.
District Court of Appeal of Florida, Fourth District.
June 28, 2000.
*470 Richard L. Jorandby, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Claudine LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
GUNTHER, J.
The Defendant entered an open plea to second degree arson. The trial judge who presided over the first sentencing hearing recused himself before pronouncing a sentence. A second sentencing hearing was held, at the conclusion of which a second trial judge sentenced the Defendant to five years in prison followed by ten years probation. The Defendant appeals, arguing the second trial judge abused his discretion in failing to continue the second sentencing hearing so he could present mitigating evidence. We agree.
The twenty-one-year-old Defendant was the victim of a severe beating. Daniel Dingman, a good friend of the young man who allegedly beat the Defendant, was either present or knew of the beating, but when questioned by the police, he denied any knowledge. Within twelve hours of learning the State would not be filing charges in that case, the Defendant doused Dingman's car with gasoline and set fire to it while it sat in the driveway of Dingman's parents' residence.
At the original sentencing hearing in July 1999, the State presented the testimony of Dingman's father. He testified he was home sleeping when he was awakened during the early morning hours by several loud explosions. Looking out the window, he saw his son's car engulfed in flames in his driveway. He testified he and his family were "very afraid."
The Defendant presented the testimony of the Defendant's mother. She testified that the Defendant had a lifetime of emotional problems, had a history of drug and alcohol addiction, and had been Baker Acted when he became suicidal at the age of seventeen.
Dr. Robert Brugnoli, a psychologist in private practice, corroborated the Defendant's mother's testimony. He testified he had been treating the Defendant since the Defendant was eleven years old. He testified about the Defendant's history of serious behavioral and emotional difficulties and the various diagnoses the Defendant had had. He testified the Defendant did very well at the beginning of his treatment, but when he developed substance abuse problems, his amenability to mental treatment decreased and the Defendant became suicidal. He clarified that the Defendant had significant emotional and behavioral problems before his substance abuse problems complicated them. He testified that if the Defendant had treatment for his substance abuse problems, then he might become more amenable to treatment for his psychological, emotional, and mental problems, but until he got his *471 alcohol and drug problems under control, he was not amenable to psychological treatment. He admitted that his opinions were limited to his last examination of the Defendant four years before the sentencing hearing.
Jill Drake, a representative of the public defender's office who works with alternative sentencing, testified she had located an appropriate substance abuse residential program that would simultaneously treat the Defendant for his substance abuse problems and his psychological problems. The program, referred to as "Avon Park," was the only public facility in Florida with dual diagnosis, that is, that would treat both substance abuse problems and mental disorders.
The first trial judge expressed concern because nobody had done a psychological evaluation on the Defendant in four years. He observed Dr. Brugnoli could testify only that the Defendant had had substance abuse problems and that as long as he had those problems, he was not amenable to treatment for his mental disorder. The judge stated that without testimony from someone who had examined the Defendant recently, he could not consider the mitigating circumstance of whether he was amenable to treatment. He concluded the sentencing hearing by announcing that he wanted to consider the evidence before sentencing the Defendant.
Before the first trial judge could issue a sentencing order, the Defendant moved to continue the sentencing hearing, asking for time to allow Dr. Brugnoli to examine the Defendant in order to determine his present mental health and amenability to treatment. The first trial judge never ruled on this motion. Instead, just days later, he recused himself for reasons unrelated to the issues here.
One week later, the case was reassigned to a second trial judge. On August 5, the case was noticed for another sentencing hearing to be held on August 16. On August 12, the Defendant filed another motion to continue, representing that Dr. Brugnoli had examined the Defendant but needed time to compile his report. Defense counsel also stated that Dr. Brugnoli and Ms. Drake needed time to prepare their testimony, which he described as "vital."
The second trial judge did not rule on either of the Defendant's pending motions prior to the August 16 hearing. At the hearing, defense counsel argued he was not ready to proceed with sentencing and that he needed only two more weeks to allow Dr. Brugnoli to adequately prepare his testimony and clear his calendar to attend the sentencing hearing, apparently per Dr. Brugnoli's request. Defense counsel argued that Dr. Brugnoli's testimony was important and would be different from his testimony at the prior hearing because he had recently examined him.
The State objected to a continuance because the victim and his family wanted the case concluded as quickly as possible and because the prosecutor who had been assigned to this case was leaving the state attorney's office. The State offered to stipulate that the Defendant was amenable to psychological treatment. In response, defense counsel reminded the trial court that the Defendant was in jail and not out on bond and that he was asking only for a two-week continuance. He declined the State's offer to stipulate, indicating that live testimony would better substantiate their request for a mitigator allowing treatment after a short jail sentence rather than a long prison term without opportunity for treatment.
The second trial judge denied the Defendant's motions. Despite the Defendant's failure to accept the State's offer to stipulate, the judge stated he would accept the State's agreement the Defendant was amenable to treatment. He also stated he would listen to Dr. Brugnoli's testimony from the prior hearing if the Defendant wished. While the record shows that the judge had all documentary evidence from the prior hearing, nothing indicates he *472 ever reviewed the prior testimony before sentencing the Defendant. In fact, the record suggests he did not have the opportunity to review the prior transcript prior to pronouncing the sentence.
The State presented essentially the same testimony it had presented at the prior sentencing hearing, with some additions. The prosecutor who had decided not to prosecute the case in which the Defendant was a victim testified about the decision she made and the angry way the Defendant acted when she told him of her decision. Dingman's father again testified that he and his family were "very afraid." He stated he was not opposed to the Defendant receiving medical treatment, but he did not believe the Defendant should be released into the community until he was well.
The second trial judge acknowledged he had read a statement previously prepared by the Defendant's mother and asked her if she wished to comment further. She stated essentially what she had said at the previous hearing, but added she has noticed a big difference in the Defendant emotionally while he is on his medication.
The State sought a five-year prison sentence followed by a period of probation. The Defendant sought an incarceration period shorter than five years, perhaps in county jail, followed by placement in a treatment program such as Avon Park. After briefly questioning the Defendant about the facts of the case, the second trial judge stated he did not believe mitigation was appropriate in this case, notwithstanding that Dr. Brugnoli would have testified the Defendant was amenable to treatment. He thus imposed a sentence of five years in prison followed by ten years probation. No psychological or substance abuse treatment programs were ordered.
The Defendant argues that the second trial judge abused his discretion by denying his motion for continuance to allow him to present Dr. Brugnoli's and Ms. Drake's live testimony. He contends the trial court's recognition of his amenability to psychological treatment was meaningless because it was made without knowing any of his mental health history, which Dr. Brugnoli could have provided. He also complains that the State was allowed an opportunity to re-present its evidence, while he was denied any opportunity to present his mitigating evidence even once.
The granting or denial of a motion for continuance is within the trial court's discretion. See Bouie v. State, 559 So.2d 1113 (Fla.1990). Denial of a motion for continuance "should not be reversed by an appellate court unless there has been a palpable abuse of this judicial discretion" that "clearly and affirmatively" appears in the record. Magill v. State, 386 So.2d 1188, 1189 (Fla.1980). "The common thread running through those cases in which a palpable abuse of discretion has been found is that defense counsel must be afforded an adequate opportunity to investigate and prepare any applicable defense." Smith v. State, 525 So.2d 477, 479 (Fla. 1st DCA 1988). Most likely, this is because "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).
Here, a palpable abuse of discretion has been shown. In the month between the first and second sentencing hearings, the Defendant had been examined by Dr. Brugnoli. The Defendant requested only two more weeks in order to give Dr. Brugnoli and Ms. Drake sufficient time to prepare their testimony and clear their calendars. Dr. Brugnoli had specifically requested this notice in order to prepare and clear his calendar. Both would have provided testimony material to the Defendant's cause, Dr. Brugnoli testifying about the Defendant's amenability to psychological treatment, and Ms. Drake testifying about an available treatment program suitable for the Defendant. See § 921.0016(4)(d), Fla. Stat. (1999) (providing for mitigation when a defendant "requires *473 specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment"). Dr. Brugnoli also would have provided the second trial judge with information regarding the Defendant's mental problems and his need for treatment.
Although the second trial judge offered to review the evidence adduced at the first sentencing hearing, the record does not reflect he did so. Even if he did, most of the testimony the Defendant sought to introduce in the second sentencing hearing was substantively different from the testimony at the first sentencing hearing because, in the interim, Dr. Brugnoli had examined the Defendant.
The State's objections to the continuance were that the victim and his family wanted the case concluded quickly and that the prosecutor assigned to this case was leaving the state attorney's office soon. Certainly, the victim and his family deserve to have this case concluded as soon as possible, but there is no proof they would have been adversely affected by a two-week continuance. The Defendant was incarcerated awaiting sentencing and was not seeking immediate release. The questions to be resolved at sentencing were how long he would remain incarcerated and whether he would get the treatment he needed at a facility such as Avon Park, an idea to which even the Defendant's family appeared agreeable. Moreover, it should go without saying that the prosecutor's desire to conclude this case prior to leaving the state attorney's office should not take precedence over the Defendant's right to present evidence. Waiting a mere two weeks to allow the Defendant to present evidence in an effort to prove a custodial treatment like Avon Park was the type of sentence most appropriate under all circumstances was certainly a reasonable request, especially when no argument was made to the trial court that the Defendant was intentionally delaying the proceedings.
We recognize that the second trial judge stated that no matter how amenable to treatment the evidence showed the Defendant was, he believed that the crime committed deserved severe punishment because the Defendant was motivated by revenge. The State contends that this statement creates harmless error because it indicates that even if the court had heard Dr. Brugnoli's and Ms. Drake's testimony, he would have still refused to mitigate the Defendant's sentence. We find fault with the State's reasoning because it ignores what the error here is. The error here is that the second trial judge refused to consider the Defendant's evidence and imposed a sentence after hearing only half of the evidence. Prejudging cases in such a way is improper. See Gonzalez v. Goldstein, 633 So.2d 1183, 1184 (Fla. 4th DCA 1994) (announcing an intention to make a specific ruling prior to evidence or argument "is the paradigm of judicial bias and prejudice"); see also Begens v. Olschewski, 743 So.2d 133 (Fla. 4th DCA 1999); Lewis v. State, 530 So.2d 449 (Fla. 1st DCA 1988). The Defendant had the right to present mitigating evidence to assist the court in determining the most appropriate sentence under all circumstances. That the State offered to stipulate to amenability to treatment is likewise unavailing. Simply stipulating that the Defendant was amenable to treatment did not show the sentencing court the extent of the Defendant's mental illness and his need for treatment. Moreover, live testimony in general is more dynamic and informative than the stipulation was in this case. Once the court set a second sentencing hearing and gave the State the opportunity to present live testimony, the Defendant was entitled to the same opportunity.
Thus, we conclude the second trial judge abused its discretion. Accordingly, we reverse and remand for a third sentencing hearing.
*474 REVERSED AND REMANDED FOR RESENTENCING.
DELL and SHAHOOD, JJ., concur.