# Supreme Court of Florida

_____

No. SC18-899
_____

**JOSEPH EDWARD JORDAN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC18-2012
_____

**JOSEPH EDWARD JORDAN,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

December 5, 2019

PER CURIAM.

Joseph Edward Jordan appeals the denial of his motion to vacate his conviction of first-degree murder filed under Florida Rule of Criminal Procedure 3.851, and he also petitions this Court for a writ of habeas corpus. We have

jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const.[1] For the reasons below, we affirm the trial court's order denying Jordan relief from his conviction and deny his habeas petition.

## I. BACKGROUND

The facts of this case, which include overwhelming evidence of Jordan's guilt, were set out in this Court's direct appeal opinion. *See Jordan v. State*, 176 So. 3d 920 (Fla. 2015). On or about Thursday, June 25 or Friday, June 26, 2009, Jordan beat and robbed the victim, Keith Cope, at the victim's home in Edgewater, Florida, pistol-whipping and binding him around the neck and face with multiple layers of duct tape, binding his hands and ankles with rope and leaving him injured, in distress, bound tightly, and tied to the four corners of his bed. *Id.* at 924-25, 931. Jordan made a bank withdrawal using the victim's debit card on the evening of June 25 and then drove the victim's truck to the Hollywood, Florida area, where he subsequently made several more withdrawals. *Id.* at 924, 937. After arriving in Hollywood, Jordan met up with some of his friends, including former coworker Mathew Powell and Mathew's girlfriend, Sadia Haque. *Id.* at 925. Jordan eventually told Mathew that the victim was literally tied up at his home and that Mathew could go to the victim's house and steal guns from the

---

1. The circuit court vacated Jordan's sentence of death and ordered a new penalty phase, and the State has not appealed that ruling.

victim's gun safe.  *Id.*  Mathew, Sadia, and two of their other friends then traveled to the victim's house, arriving early in the morning on Sunday, June 28, 2009.  *Id.* They found the victim in an extremely distressed state, barely alive, restrained by multiple ropes and pieces of duct tape and suspended by rope at the foot of the bed. *Id.*

Sadia called 911, and first responders arrived to transport the victim to the nearby hospital.  *Id.*  The victim then underwent emergency surgery to amputate his left shoulder and arm, which had lost circulation from the constriction of the tight rope.  *Id.*  The victim's treating physician concluded that the victim's body was dying, testifying at trial that the victim entered the hospital completely unresponsive and suffered from almost no blood pressure, several organ failures, cardiovascular collapse, and compartment syndrome, a life-threatening illness related to the condition of his left arm.  *Id.*  The victim remained unresponsive until he was removed from life support and died at the hospital on July 13, 2009.  *Id.*

Police began searching for Jordan as the main suspect in their investigation after interviewing the four witnesses who found the victim.  *Id.*  While hiding from the police in South Florida, Jordan admitted to two friends that he had robbed and restrained the victim.  Police eventually arrested Jordan on July 18, 2009. Afterwards, Jordan wrote several letters to one of the detectives assigned to his

case, Joanne Winston, and spoke with her both over the telephone and in person, admitting to her several times that he had robbed and tied up the victim.

After hearing the evidence presented at trial, Jordan's jury found him guilty of first-degree felony murder and robbery with a firearm or other deadly weapon. *Id.* at 925. Following the penalty phase presentation, the jury recommended death by a vote of ten to two for the murder. *Id.* at 926. The trial court followed the jury's recommendation and sentenced Jordan to death for the murder and life in prison for the robbery. *Id.* On direct appeal, this Court affirmed Jordan's convictions and sentences. *Id.* at 924.[2]

In 2016, Jordan filed an initial motion for postconviction relief. Following an evidentiary hearing on one claim, the trial court denied relief on all of Jordan's guilt phase claims but vacated Jordan's death sentence and ordered a new penalty phase pursuant to *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). Jordan appeals the

---

2. Jordan raised the following six claims on direct appeal: "(1) that the trial court should have declared a mistrial due to the prosecutor's improper statements during closing arguments; (2) that the trial court erred in finding the heinous, atrocious, or cruel aggravating circumstance; (3) that the trial court abused its discretion by admitting the victim impact statements into evidence; (4) that the trial court declined to find as a mitigating circumstance Jordan's ability to conform his conduct to the requirements of the law was substantially impaired; (5) that the sentence of death should be reversed under this Court's proportionality review; and (6) that Florida's death penalty statutory scheme is facially unconstitutional under *Ring v. Arizona*, 536 U.S. 584 (2002)." *Jordan*, 176 So. 3d at 927. This Court also reviewed the sufficiency of the evidence supporting Jordan's convictions, and the proportionality of his death sentence. *Id.* at 927-38.

trial court's denial of his guilt phase claims and also petitions this Court for a writ of habeas corpus.

## II. POSTCONVICTION APPEAL

### Ineffective Assistance During the Guilt Phase

Jordan first argues that trial counsel was ineffective during the guilt phase (1) for failing to object to the prosecutor's multiple improper statements during the guilt phase closing argument; (2) in presenting a deficient motion for judgment of acquittal; (3) for failing to object or move to exclude the admission of certain duct tape evidence; and (4) for failing to challenge the State's timeline regarding how long the victim was bound.

Following the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), we have explained that, to prevail on an ineffective assistance of counsel claim, a defendant must establish two prongs, deficient performance and prejudice, both of which are mixed questions of law and fact:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

*Peterson v. State*, 221 So. 3d 571, 583 (Fla. 2017) (quoting *Schoenwetter v. State*, 46 So. 3d 535, 546 (Fla. 2010)).

To establish the *Strickland* deficiency prong, "the defendant must demonstrate that counsel's performance was unreasonable under 'prevailing professional norms.' " *Id.* at 583-84 (quoting *Morris v. State*, 931 So. 2d 821, 828 (Fla. 2006)). There is a strong presumption that trial counsel's performance was not deficient but rather was sound trial strategy, and the defendant bears the burden to overcome it. *Strickland*, 466 U.S. at 689-90. Further, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The *Strickland* prejudice prong requires the defendant to "show that but for his counsel's deficiency, there is a reasonable probability that he would have received a different [outcome]," *Porter v. McCollum*, 558 U.S. 30, 41 (2009), where a reasonable probability is one that is "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694.

Because *Strickland* "requires establishment of both prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." *Waterhouse v. State*, 792

So. 2d 1176, 1182 (Fla. 2001). Moreover, we employ a mixed standard of review, reviewing a trial court's factual findings for competent, substantial evidence, while reviewing its legal conclusions de novo. *Bolin v. State*, 41 So. 3d 151, 155 (Fla. 2010).

As explained below, we affirm the trial court's denial of relief as to each of Jordan's ineffective assistance of counsel claims.[3]

## (1) Guilt Phase Closing Argument

Jordan argues that his trial counsel was ineffective for failing to object to the prosecutor's improper comments during the guilt phase closing argument, contending that counsel was ineffective for failing to object to (1) the prosecutor's two golden rule arguments; (2) the prosecutor's statement, "Don't let him get away with this"; (3) the prosecutor's improper reference to Jordan's alleged lack of remorse; and (4) the prosecutor's comment denigrating Jordan's theory of defense.

Golden Rule Arguments

Jordan first argues that trial counsel should have objected when the prosecutor made two improper golden rule arguments during closing argument. "A 'golden rule' argument asks the jurors to place themselves in the victim's

---

3. Jordan also claims that the cumulative effect of trial counsel's ineffective assistance entitles him to relief. However, as explained below, because Jordan has not established deficient performance with respect to any claim, there is nothing to cumulate. *See Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008).

position, [and] asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative." *Hutchinson v. State*, 882 So. 2d 943, 954 (Fla. 2004), *abrogated on other grounds by Deparvine v. State*, 995 So. 2d 351, 369 (Fla. 2008). In this case, the prosecutor stated:

> When he closed the door behind him, it was as if he had put Keith Cope on a raft and set him adrift in an endless sea. He had absolutely no ability, no tool, to free himself. And he could only hope that someone would come and find him. Three days later, three days without water, three days of sunrises and sunsets, three days of watching the clock and minutes slowly pass by, someone came and found Keith Cope. And it was too late. As the days ticked slowly by, his hope got smaller and smaller, I would imagine. As the days ticked slowly by, he probably knew that no one was coming for him.
>
> . . . .
>
> Just because the defendant was owed something doesn't mean that he has a right to come up here and demand someone else's money and take it from him when they're not willing to give it, and to use force to do that, use guns and tape and rope. If you could do that in America, then we'd all be in trouble because the mortgage companies would have us tied to the bed.

Jordan claims that the first of the prosecutor's arguments improperly invited the jurors to place themselves in the victim's position by narrating what the victim must have felt while being tied up for three days. Jordan also claims that the second of the arguments improperly invited the jurors to imagine what being tied to the bed feels like by asking the jurors to imagine being tied to the bed by their creditors. Jordan contends that counsel's deficiencies in failing to object to these

- 8 -

arguments prejudiced him in the guilt phase by unduly inflaming the sympathy and passions of the jury against him.

However, trial counsel's decision not to object to the first alleged golden rule argument was not deficient. The first comment did not expressly ask the jurors to put themselves in the victim's position but did impliedly ask them to imagine what the victim would have felt emotionally as he died. Although it would have been wholly proper for the prosecutor to describe, based on facts in evidence, the manner of death suffered by the victim as a result of Jordan's actions, the prosecutor at least came close to crossing the line by imagining the loss of hope that the victim would have experienced as he lay bound and tied to his bed. Additionally, we agree that the second brief comment about debt collectors in America did constitute a golden rule argument. However, the trial court found that defense counsel's strategy of not objecting (in order to maintain credibility with the jury by keeping his objections to a minimum) was reasonable in this instance. We agree, and note that any description of the facts of this case would have an emotional impact on a jury—and that a more artfully crafted and wholly proper argument covering these facts would likely have been more impactful than the technical golden rule violation talking about mortgage companies in America. Accordingly, we find no deficiency in counsel letting these comments pass without objection. *Cf. Floyd v. State*, 18 So. 3d 432, 446 (Fla. 2009) (relying on trial

counsel's testimony that "he made a strategic decision to limit unnecessary objections to avoid 'irritating the jury during the course of the trial' " to hold that "[t]rial counsel was not ineffective for following a trial strategy that, in hindsight, did not ultimately result in the defendant's acquittal").

<u>"Don't let him get away with this"</u>

Jordan next claims that trial counsel should have objected when the prosecutor told the jury not to let Jordan get away with the charged crime of first-degree felony murder. Jordan contends that trial counsel's failure to object to this statement was prejudicial because hearing it inflamed the jurors' emotions, influencing them to convict him of first-degree felony murder instead of a lesser-included offense. We disagree.

The record shows that the prosecutor stated during closing argument, "Don't let him get away with this," within the context of an argument that the law requires the jury to return a verdict for the highest offense established beyond a reasonable doubt and that although there were lesser-included offenses, the evidence clearly supported a conviction of first-degree felony murder. Jordan previously raised a prosecutorial misconduct claim on direct appeal regarding this statement, arguing that it constituted an improper comment. On direct appeal, we agreed that the comment was improper but concluded that it did not rise to the level of fundamental error. *See Jordan*, 176 So. 3d at 929. Again, however, just because

- 10 -

the brief statement within the context of an otherwise valid argument was improper does not mean that trial counsel was deficient for failing to object to it. Following an evidentiary hearing, the trial court accepted defense counsel's testimony regarding his strategy decision of limiting objections, and found it to be reasonable under the circumstances. Based upon the trial court's findings and our review of the record we agree that counsel's performance was not deficient as to this issue. *Cf. Floyd*, 18 So. 3d at 446 (concluding trial counsel was not deficient for strategically limiting unnecessary objections to avoid irritating the jury).

Remorse

Jordan also claims that trial counsel should have objected when the prosecutor referenced Jordan's lack of remorse during the guilt phase. Jordan argues that counsel's deficient performance prejudiced his jury because it inflamed their emotions regarding his guilt. We disagree.

Although we recognize that, generally, it is improper for the State to comment on a defendant's lack of remorse, *see Jones v. State*, 569 So. 2d 1234, 1240 (Fla. 1990), the record shows that trial counsel, not the State, first raised this issue. Specifically, during trial counsel's opening statement, he stated that he "would like to offer the condolences to [the victim] and his family," and that he was "sorry for" the fact that the victim "ultimately pass[ed] away in a hospital." The defense also argued that Jordan did not intend by his actions to kill the victim.

- 11 -

Any statements of remorse for the victim's death would lend support to the

argument that Jordan should not be held accountable for a death that he did not

intend. During the guilt phase closing argument, the prosecutor stated:

> Let's talk about the defense's argument in this case. Let's start with I'm sorry. Nowhere in the evidence, nowhere, is there a single fact that demonstrates the defendant is sorry about anything.
>
> He wrote six letters. You listened to them yesterday as they were read. You'll have an opportunity to take them in the back and read them yourself. Look carefully for the words I'm sorry. I'm sorry doesn't appear anywhere. I'm sorry doesn't come up in the statement to Joanne Winston out at the jail. There is no I'm sorry. When he told his friends, Raymond Hill and Eddie Yarrow and Mathew Powell and Sadia Hague, not once did he say I'm sorry. Not once did he say, God, I wish it hadn't happened this way. I – I wish Keith were in better shape or hadn't died.
> . . . .
> You know, nowhere in there, though, was I'm sorry. The most we got was I'm suicidal. I F-ed up. I didn't want to go to jail, but we never heard I'm sorry.

The prosecutor's statements regarding Jordan's lack of remorse were made

in response to trial counsel's opening statement, wherein counsel gave his

condolences to the victim's family in a show of sympathy that counsel testified (at

the evidentiary hearing) that he believed would have been understood by the jury

as an expression of sympathy "on behalf of the defense team." Yet, the purpose of

opening statements is "for counsel to outline what [counsel] in good faith expect[s]

to be established by the evidence presented at trial." *Perez v. State*, 919 So. 2d

347, 363 (Fla. 2005). Therefore, by injecting remorse into his opening statement in

a case where part of the defense was that Jordan did not know the victim was in danger and had not meant to kill the victim when he left him tied up, we find that trial counsel opened the door for the State to address the lack of any evidence of remorse in this case. Accordingly, we agree with the trial court that counsel would have been unlikely to prevail if he had objected and was therefore not deficient for failing to do so. *Cf. Singleton v. State*, 783 So. 2d 970, 978 (Fla. 2001) (holding that "lack of remorse is admissible [during the penalty phase of capital cases] to rebut evidence of remorse or other mitigation such as rehabilitation"); *Eaglin v. State*, 19 So. 3d 935, 946 (Fla. 2009) ("[L]ack of remorse can be admitted [during the penalty phase of capital cases] to rebut evidence presented by a defendant of remorse or other mitigating factors such as rehabilitation.").

Defense Theory

Jordan also claims that trial counsel should have objected when the prosecutor mischaracterized and denigrated Jordan's theory of defense.

The record shows that in the prosecutor's closing argument, he stated,

I told you it was coming, and there, there we heard it. It's everybody's fault but the defendant's. I mean, if he had stayed in the middle of the bed, he would still be alive. If these guys had come up from south Florida a day and a half earlier, he'd still be alive. Come on. Everybody's fault but his. I mean, he snapped? Is that a defense? He snapped?

Although the points being made by the prosecutor could have been made in an appropriate way, we agree with Jordan that the tone of the argument is

- 13 -

denigrating. *See, e.g., Jackson v. State*, 147 So. 3d 469, 486-87 (Fla. 2014) (explaining that although a prosecutor is allowed to critique and counter a theory of defense, a prosecutor may not denigrate or ridicule defense counsel or the theory of defense). Again, however, we cannot find on this record that Jordan has demonstrated deficient performance for the reasons already explained regarding trial counsel's strategy.

### (2) Motion for Judgment of Acquittal

Jordan also argues that his trial counsel was ineffective by presenting a deficient motion for judgment of acquittal. He contends that the motion prejudiced him because, had trial counsel properly argued the legal grounds for the motion, the trial court would have granted the motion. We disagree.

We first note that the argument that appellate counsel believes should have resulted in a judgment of acquittal as to the felony murder charge was in fact made by defense counsel at trial. Trial counsel cannot be ineffective for failing to make an argument that trial counsel actually made. *Cf. Dennis v. State*, 109 So. 3d 680, 692 (Fla. 2012) ("[T]rial counsel is not ineffective for failing to object to [certain] testimony . . . because trial counsel did, in fact, object repeatedly."). Tellingly, appellate counsel even acknowledges in presenting Jordan's claim of ineffective assistance of appellate counsel (in the habeas petition) that trial counsel's judgment

of acquittal argument was made with "enough specificity to preserve the issue for appeal."

We independently review the sufficiency of the evidence in every capital case and did so here. *Jordan*, 176 So. 3d at 937-38 ("Although Jordan does not raise the issue of sufficiency of the evidence on appeal, we nevertheless must independently review 'the evidence to determine whether [it supports the] murder conviction.' "). Because the evidence was clearly sufficient to support the verdict, *see id.*, there is no additional argument available to counsel that would have changed the correct legal ruling of the trial court on this issue. Moreover, this issue is foreclosed by the law of the case doctrine. It is well-established that "all questions of law . . . decided by the highest appellate court become the law of the case [and] . . . must be followed in subsequent proceedings." *Brunner Enters., Inc. v. Dep't of Revenue*, 452 So. 2d 550, 552 (Fla. 1984). Only where strict adherence to a point of law previously decided in a former appeal would result in "manifest injustice" will an appellate court reconsider and correct it. *Fla. Dep't. of Transp. v. Juliano*, 801 So. 2d 101, 106 (Fla. 2001). Thus, in order to prevail on an ineffective assistance of counsel claim that, at its core, seeks to revisit our prior sufficiency determination, Jordan would have to show that adherence to the ruling would result in a manifest injustice. *See id.* However, he has not made this argument below or on appeal.

We thus conclude that the trial court properly denied relief on this claim.

### (3) Duct Tape Evidence

Jordan next argues that his trial counsel was ineffective for failing to object or move to exclude the admission of certain duct tape evidence that included the victim's hair. He contends that trial counsel's deficient performance prejudiced him because the jurors' emotions were inflamed and their sympathy was evoked by seeing the duct tape evidence containing the victim's hair, which influenced their decision to convict him of first-degree felony murder. We disagree.

In choosing not to object to the admission of a piece of duct tape from the crime scene containing a fragment of the victim's hair, trial counsel was not deficient. Florida's Evidence Code sets forth the general rules that relevant evidence is admissible, § 90.402, Fla. Stat. (2019), and that evidence is relevant if it "tend[s] to prove or disprove a material fact," § 90.401, Fla. Stat. (2019). The piece of duct tape with the victim's hair on it was not irrelevant, because it tended to prove the manner of the killing. Testimony was given by several witnesses, including Detective Seldaggio and emergency response personnel, that the victim's face, neck, and head were tightly bound with a large amount of duct tape. The duct tape and hair corroborate this testimony. Although this piece of evidence may have been cumulative to other evidence, this fact does not render this evidence irrelevant, as Jordan argues. As found by the trial court, trial counsel could not

have had this evidence excluded as irrelevant, and counsel was therefore not deficient for failing to object to the evidence as irrelevant. Counsel could have objected based upon section 90.403, Florida Statutes, arguing that the probative value of the evidence was substantially outweighed by unfair prejudice (given the cumulative nature of the evidence). However, this was not the postconviction argument; it would have been well within the trial court's discretion to deny the objection had it been made; and, in any event, we could not find on this record that counsel was deficient for failing to make that objection.

### (4) The State's Timeline

In his last claim on appeal, Jordan argues that his trial counsel was ineffective for failing to challenge the State's timeline regarding how long the victim was bound. He contends that, had trial counsel challenged the State's timeline that the victim was restrained for three days, there is a reasonable probability that the jury would not have convicted him of first-degree felony murder. We disagree.

Trial counsel was not deficient for failing to object to the State's timeline because the totality of the record clearly supports the three-day timeframe argued by the State. First, the victim's ex-wife testified that she saw the victim's truck parked at his home around 7:30 p.m. on Wednesday, June 24, 2009, but that it was not parked at his home around 6:30 a.m. on Thursday, June 25, 2009. Bank

records admitted into evidence showed that Jordan used the victim's debit card to withdraw money near the victim's house at 8:18 p.m. on June 25, and repeatedly used the card in South Florida over the next several days. Testimony from a South Florida police officer, Leonard Tinelli, revealed that he saw Jordan in South Florida around 7:30 p.m. on June 26, 2009. Additionally, Jordan admitted to Detective Joanne Winston that he had taken the victim's truck and tied him up. Jordan also told Mathew Powell and two of his other friends that he had tied up the victim and taken his truck. Finally, Mathew and three witnesses found the victim restrained to the bed around 6 a.m. on June 28, 2009. This evidence shows that it was reasonable for the State to argue that the victim was bound for three days. Accordingly, the record establishes that trial counsel's choice not to object to the three-day timeline was a reasonable one under the norms of professional conduct and, therefore, not deficient.

### III. HABEAS PETITION

In his habeas petition, Jordan argues that appellate counsel was ineffective on direct appeal for (1) failing to raise a claim that the trial court's denial of trial counsel's motion for judgment of acquittal was fundamental error; and (2) failing to raise a claim that the trial court abused its discretion by denying trial counsel's motion for continuance.

Ineffective assistance of appellate counsel claims are generally proper in a petition for a writ of habeas corpus. *See Wickham v. State*, 124 So. 3d 841, 863 (Fla. 2013). This Court has explained the applicable standard of review as follows:

> "The standard of review for ineffective appellate counsel claims mirrors the *Strickland* standard for ineffective assistance of trial counsel." *Id.* Specifically, to be entitled to habeas relief on the basis of ineffective assistance of appellate counsel, the defendant must establish
>
> > [first, that] the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
>
> *Bradley v. State*, 33 So. 3d 664, 684 (Fla. 2010) (quoting *Pope v. Wainwright*, 496 So. 2d 798, 800 (Fla. 1986)). Further, "appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims." *Valle v. Moore*, 837 So. 2d 905, 908 (Fla. 2002).

*England v. State*, 151 So. 3d 1132, 1140 (Fla. 2014).

In his first habeas claim, Jordan argues that appellate counsel was ineffective for failing to challenge the trial court's denial of the motion for judgment of acquittal. Jordan specifically contends that felony murder was not proven because there was a break in the chain of events between the robbery and the victim's death. This claim is precluded by the law of the case doctrine, as this Court has already determined the sufficiency of the evidence on direct appeal and Jordan has

not made an argument alleging manifest injustice. *See Juliano*, 801 So. 2d at 106. However, even when addressed on its merits, this claim fails.

Jordan's argument is based upon several readily distinguishable district court cases involving homicides committed during attempts by felons to flee from the scene of a felony. Those cases held that if there is no definite break in the chain of events beginning with the felony and ending with the murder, the felony, even though it was technically complete, is said to continue to the time of the murder. *See, e.g.*, *Allen v. State*, 690 So. 2d 1332, 1334 (Fla. 2d DCA 1997); *Parker v. State*, 570 So. 2d 1048, 1051 (Fla. 1st DCA 1990); *Mills v. State*, 407 So. 2d 218, 221 (Fla. 3d DCA 1981). These courts evaluate several factors when determining whether a felon is responsible for a homicide committed while escaping from a crime scene, i.e., whether a break in the chain of circumstances between the killing and the underlying felony occurred, including if "the fleeing felon has reached a place of temporary safety." *Allen*, 690 So. 2d at 1334; *see also Parker*, 570 So. 2d at 1051. The felony murder rule generally does not apply if the felon reached a place of temporary safety after committing the felony and prior to the victim's killing. *State v. Williams*, 776 So. 2d 1066, 1070 (Fla. 4th DCA 2001) (finding no felony murder when the defendant fled the scene of the felony carjacking but then reached a place of temporary safety by stopping for pizza and relaxing near a 7-Eleven before fatally colliding with the victim 24 hours after the carjacking).

Jordan contends that appellate counsel should have argued that the evidence cannot support the felony murder conviction because he reached "a place of temporary safety" after fleeing the scene of the robbery (by traveling to the home of his friend Mathew Powell), before the victim died in the hospital. The argument is meritless. Because Jordan inflicted the injuries and committed the actions that led to the victim's death at the scene of the robbery, before fleeing, cases involving a murder committed after fleeing the scene of the robbery or other felony are inapposite. *Cf. Fitzpatrick v. State*, 900 So. 2d 495, 509 (Fla. 2005) (rejecting claim that trial court erred in failing to grant a judgment of acquittal with regard to felony murder where the victim was stabbed, sexually battered, left on the side of the road, and subsequently found and treated at the hospital before dying from her injuries because "[t]he State presented competent, substantial evidence from which the jury could find that there was sufficient evidence that the killing occurred during a sexual battery").

Appellate counsel cannot be ineffective for failing to raise this meritless claim. *See Valle v. Moore*, 837 So. 2d at 908.

Jordan's second habeas claim, that appellate counsel was ineffective for failing to argue that the trial court abused its discretion in denying trial counsel's motion for continuance, resulting in undue prejudice, is also without merit.

As a general rule, "the granting or denying of a motion for continuance is within the discretion of the trial court." *Williams v. State*, 438 So. 2d 781, 785 (Fla. 1983). "A court's ruling on a motion for continuance will only be reversed when an abuse of discretion is shown." *Smith v. State*, 170 So. 3d 745, 758 (Fla. 2015) (quoting *Snelgrove v. State*, 107 So. 3d 242, 250 (Fla. 2012)). We have explained the abuse of discretion standard as follows:

> This standard is generally not met "unless the court's ruling on the continuance results in undue prejudice to the defendant." [*Snelgrove*, 107 So. 3d at 250]. . . . "While death penalty cases command our closest scrutiny, it is still the obligation of an appellate court to review with caution the exercise of experienced discretion by a trial judge in matters such as a motion for a continuance." *Doorbal*[*v. State*], 983 So. 2d [464,] 486 [(Fla. 2008)] (quoting *Hernandez-Alberto v. State*, 889 So. 2d 721, 730 (Fla. 2004)).

*Id.* at 758-59. "Denial of a motion for continuance 'should not be reversed by an appellate court unless there has been a palpable abuse of [the trial court's] judicial discretion' that 'clearly and affirmatively' appears in the record." *Weible v. State*, 761 So. 2d 469, 472 (Fla. 4th DCA 2000) (quoting *Magill v. State*, 386 So. 2d 1188, 1189 (Fla. 1980)).

Jordan contends that he was unduly prejudiced by the trial court's decision not to grant a continuance when attorney Christopher L. Smith was appointed to Jordan's defense team as "second-chair" three weeks before trial. Attorney Michael W. Nielson, first chair, moved to continue the trial in order to get Smith "up to speed" on the case. The trial court denied the motion for continuance, and

- 22 -

later denied Nielson's renewed motion. At trial, Nielson performed the opening statement, closing argument, and examined many of the witnesses. Smith moved for judgment of acquittal and interviewed some of the witnesses at trial. Although Smith was assigned to the case only a few weeks prior to trial, the record does not show that he was in any way unprepared for it. Nothing in the record indicates that Smith lacked time to procure witnesses or interview or prepare them for trial.

The record clearly shows that Jordan was afforded effective assistance of trial counsel in general. Jordan specifically argues that Smith was deficient in advising Jordan not to testify. However, Jordan has not demonstrated that failure to grant the continuance in any way affected this advice, or that it was not good advice. Moreover, Jordan testified that, ultimately, he knew it was his personal decision not to testify, and competent, substantial evidence supports the trial court's finding that Jordan knowingly and voluntarily chose not to testify. Although Jordan told the judge that he was concerned that Smith was not sufficiently prepared to advise him on his decision, the record does not reflect that Smith was ill-prepared for trial, and it further shows that Jordan also received advice from Nielson, whom Jordan does not accuse of lacking preparation. This claim is wholly without merit. Thus, appellate counsel was not ineffective for failing to raise it. *See Valle*, 837 So. 2d at 908.

Accordingly, we deny Jordan's habeas petition.

- 23 -

# IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's order denying Jordan relief from his conviction and deny his habeas petition.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, LAGOA, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Volusia County,
        Terence Robert Perkins, Judge - Case No. 642009CF002872XXXAWS
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, and Lisa Marie Bort, Adrienne Joy Shepherd, and Ali Shakoor, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

        for Appellant/Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and Patrick A. Bobek, Assistant Attorney General, Daytona Beach, Florida,

        for Appellee/Respondent